64 F.3d 238
 19 Employee Benefits Cas. 2202,
Medicare & Medicaid Guide P 43,580
Stephen PERRY, Executor for the Estate of Harold L. Perry,
Plaintiff-Appellee,
v.
UNITED FOOD AND COMMERCIAL WORKERS DISTRICT UNIONS 405 AND
442 and Retail Food Employers Health and Welfare
Trust Fund, Defendant-Appellant,
Louis W. Sullivan, M.D., Secretary of Health and Human
Services; Vanderbilt University Medical Center, Defendants,
Metropolitan Life Insurance Company, Defendant-Appellee.
 Nos. 94-5657, 94-5877.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 4, 1995.
Decided Sept. 1, 1995.
 
 Sabin R. Thompson (argued and briefed), Williams & Prochaska, Nashville, TN, for plaintiff-appellee.
 Joseph Trovato, New York City, John J. Heflin, Rickey, Bourland, Heflin & Alvarez, Memphis, TN, for defendant-appellee.
 L. Webb Campbell, II, Sherrard & Roe, Nashville, TN, Randall A. Constantine (argued and briefed), Amy L. Lloyd (briefed), Elrod & Thompson, Atlanta, GA, for defendant-appellant.
 Before: LIVELY, MARTIN, and SUHRHEINRICH, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 This contract action for recovery of medical expenses incurred by a decedent was removed to federal district court as one arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sec. 1001 et seq. (1988) (ERISA) and the Medicare Secondary Payer statute, 42 U.S.C. Sec. 1395y (1988 & Supp. V 1993) (MSP). The district court, after determining that the defendant-appellant breached its contract with the plaintiff's decedent and violated terms of ERISA and the MSP statute, granted summary judgment for the plaintiff and awarded damages. For the reasons that follow, we reverse the judgment of the district court and remand the case with directions to dismiss.
 
 I.
 A.
 
 2
 Harold L. Perry was hospitalized at Vanderbilt University Medical Center (Vanderbilt) from November 23, 1988, until his death on December 24, 1988. Mr. Perry had been disabled since February 1983 and was eligible for Medicare benefits through Blue Cross and Blue Shield of Tennessee at the time of his death. As a retired General Electric Co. (GE) employee, Mr. Perry also was covered as a participant in the GE Plan, which provided comprehensive medical benefits. GE's coverage was provided through a policy with Metropolitan Life Insurance Co. (MetLife) and was governed by ERISA. At the time of Mr. Perry's death, his wife, Ruth N. Perry, was an employee of the Kroger Co. in Nashville, Tennessee. As such, she was a participant in the United Food and Commercial Workers Health and Welfare Trust Fund (the Fund), which was also governed by ERISA.
 
 
 3
 As executor of Mr. Perry's estate (the Estate), Stephen Perry filed suit in the Circuit Court for Davidson County, Tennessee against MetLife, Vanderbilt, the Fund, and Blue Cross and Blue Shield of Tennessee for breach of contract and bad faith insurance practices. Stephen Perry claimed that the balance of Harold Perry's hospitalization bill from Vanderbilt was $117,539.13, that these medical expenses were covered by his and his wife's health benefit plans, as well as the Medicare program administered by Blue Cross and Blue Shield, and that none of these entities had yet paid these expenses. Some earlier charges incurred during his illness had been paid.
 
 
 4
 The Secretary of Health and Human Services filed a petition for removal to federal court on the basis of the Estate's having sued Blue Cross/Blue Shield as Medicare agent. After removal to district court, the Estate voluntarily dismissed Vanderbilt from the consolidated action. In October 1992, the district court granted the Estate's motion to amend the complaint to include additional causes of action under ERISA and the MSP statute. In December 1992, the Secretary of Health and Human Services filed a motion to dismiss, asserting that the court lacked subject matter jurisdiction over the claim against the Secretary since the Estate had not exhausted its administrative remedies. None of the remaining parties objected and the district court granted the Secretary's motion to dismiss.
 
 
 5
 MetLife and the Fund answered the Estate's amended complaint, both claiming that under Tennessee state law they were not "legally obligated" to pay the Vanderbilt medical expenses. Both parties then filed motions for summary judgment, in which they made the same assertion. MetLife also asserted in its motion that it was not the primary payer. The Estate filed a summary judgment motion as well, in which it sought a determination that either the Fund or MetLife, or both, should provide primary coverage, that Vanderbilt's claim was valid, and that double damages should be assessed, pursuant to the MSP statute, 42 U.S.C. Sec. 1395y(b)(3) (1988 & Supp. V 1993), which created a private cause of action for double damages against "a primary plan which fails to provide for primary payment" in accordance with provisions of the statute.
 
 
 6
 During this same period, Vanderbilt filed a claim against the Estate in the Probate Court for Davidson County, Tennessee. The probate court concluded that Vanderbilt's claim against the Estate was barred because Vanderbilt had not filed its claim within six months of the date of notice to creditors (February 16, 1989) or within twelve months of Mr. Perry's death (December 24, 1988), as required by TENN.CODE ANN. Sec. 30-2-310. Therefore, the probate court dismissed the hospital's claim with prejudice on September 21, 1993. Vanderbilt appealed this decision on due process grounds, and the Tennessee Court of Appeals affirmed the probate court's decision. Perry v. Vanderbilt Univ. Hosp., 1994 WL 470407 (Tenn.App. Aug. 31, 1994).
 
 B.
 
 7
 The district court referred all three summary judgment motions to a magistrate judge. In his Report and Recommendation, the magistrate judge concluded that MetLife was the primary payer under the MSP statute and the relevant administrative guidelines. The magistrate judge explained that Mr. Perry remained a GE employee, despite his disabled status, and was therefore entitled to benefits under the MetLife plan. Mr. Perry's rights as an employee under that plan, the magistrate judge noted, are recognized by ERISA. The magistrate judge therefore recommended MetLife's motion for summary judgment be denied, the Fund's motion be granted to the extent it was not the primary payer of Mr. Perry's medical expenses, and the Estate's motion be granted as to MetLife's liability as primary payer but stayed as to any adjudication of MetLife's obligation to pay the claim pending resolution of Vanderbilt's claim against the Estate in state probate court.
 
 
 8
 All three parties objected to the Report and Recommendation. The Estate took issue with the magistrate judge's failure to make any findings with respect to its claim for double damages. MetLife objected to the determination that it was the primary payer, the standard of review applied in reviewing MetLife's decision to deny primary payment, and the stay pending a determination by the probate court. The Fund objected to the stay.
 
 
 9
 The district court rejected the Report and Recommendation. It agreed with MetLife that the Fund was the primary payer of Mr. Perry's medical expenses, Medicare was the secondary payer and MetLife was the tertiary payer. The court also concluded the Fund acted arbitrarily and capriciously and in violation of federal law by failing to consider the effect of federal law (the MSP statute) when deciding not to pay benefits. Accordingly, it granted the Estate's motion for summary judgment to the extent that the Fund was the primary payer, granted MetLife's motion for summary judgment to the extent that MetLife was not the primary payer, and denied the Fund's summary judgment motion. The court also found the Fund was subject to a private cause of action for double damages, pursuant to the MSP statute, ordered the Fund to pay double damages in the amount of $235,078.26, and ordered the Fund to pay the Estate's attorney fees, pursuant to ERISA, 29 U.S.C. Sec. 1132(g)(1). The Fund filed this appeal.
 
 II.
 
 10
 The Fund raises three issues in its appeal. First, it contends the Fund trustees' interpretation of the Fund's plan provisions was not arbitrary and capricious, and that the district court incorrectly held the Fund liable for Mr. Perry's medical expenses. Second, it contests the court's award of summary judgment for money damages to the Estate and disputes the assessment of double damages against the Fund pursuant to the MSP statute. Third, it argues the district court erroneously awarded attorney fees and expenses to the Estate. We review the order granting summary judgment de novo.
 
 A.
 
 11
 In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989), the United States Supreme Court, construing ERISA, held that denials of benefits by employee benefit plan administrators or fiduciaries are "to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case review should be deferential. This court has explained that trustees' determinations are "not arbitrary and capricious if they are 'rational in light of the plan's provisions.' " Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 984 (6th Cir.1991) (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir.), cert. denied, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988)). This standard "is the least demanding form of judicial review of administrative action.... When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir.1989) (quoting Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir.1985)), cert. denied, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990).
 
 
 12
 The Fund's Plan Document grants trustees "discretionary authority to determine eligibility for benefits under the Plan to determine the level of and the type of benefits provided by the Plan, and to construe the terms of the Plan." Thus, the district court properly reviewed the trustees' denial of coverage under the arbitrary and capricious standard. In doing so, however, we are convinced that it committed legal error.
 
 1.
 
 13
 Section 4.3(a)(8)of the Fund's Plan Document contains the following provision:
 
 
 14
 (a) Generally Excluded Charges. No expense benefits as provided under Article III will be payable for or in connection with any charges:
 
 
 15
 ....
 
 
 16
 (8) Which would not have been made in the absence of this coverage or which the Employee or Dependent is not legally obligated to pay .... (emphasis added)
 
 
 17
 The trustees interpreted this provision to mean that since Vanderbilt's claim against the Estate was time barred and Mr. Perry's estate was not legally obligated to pay the claimed charges, the Fund was prohibited from paying benefits to the Estate based on these charges. Because this interpretation is consistent with the plan's language, the Fund contends, the trustees' interpretation was reasonable. The Fund relied on this argument in both its answer to the amended complaint and in its motion for summary judgment. The probate court agreed with the Fund's position, and in Perry, 1994 WL 470407, the Tennessee Court of Appeals affirmed the probate court's determination that Vanderbilt's claim against the Estate was time barred under state law.
 
 
 18
 The Fund's position is not arbitrary and capricious because it is "rational in light of the plan's provisions." Miller, 925 F.2d at 984. The reasonableness of the trustees' denial of payment is underscored by the fact that any payment of the claim would grant the Estate a windfall, since Tennessee courts have held that Vanderbilt cannot recover the unpaid bill and the Estate cannot be required to pay it.
 
 2.
 
 19
 In addition to section 4.3(a)(8) and the question of the Fund's legal obligation to pay, the Fund's Plan Document contains additional language on which the trustees reasonably based their decision to deny coverage: "The benefits of a Plan which covers the person on whose expenses claim is based other than as a Dependent shall be determined before the benefits of a Plan which covers such person as a Dependent." The trustees interpreted this language to mean that MetLife was primary payer as paying agent for the plan of Mr. Perry's own employer, GE, because any claim against the Fund was based solely on the fact that Mr. Perry was his wife's "dependent." This is a reasonable interpretation of the Plan Document's language. The reasonableness of the trustees' interpretation is reinforced by the magistrate judge's Report and Recommendation, in which the magistrate judge concluded that MetLife, not the Fund, was the primary payer of Mr. Perry's claim. Again, since the trustees' position is "rational in light of the plan's provisions," Miller, 925 F.2d at 984, the Fund's denial of coverage was not arbitrary and capricious.
 
 B.
 
 20
 The district court relied on the MSP statute both to find that the Fund was the primary payer and that it was subject to damages amounting to double the amount of unpaid medical expenses. This was error. The court overlooked the fact that in relying on its plan provision that payments are to be made only for expenses for which a plan participant or beneficiary is legally obligated, the Fund never contended that Medicare was the primary payer. In fact, near the outset of the controversy between the Estate and the Fund, the Fund administrator wrote to Mrs. Perry advising her that Medicare was secondary to the Fund. (Ex. E to Motion of Secretary of Health and Human Services to Dismiss the Complaint) Further, at no time during this litigation has the Fund ever claimed that Medicare was the primary payer. The contest was always between MetLife and the Fund, and neither of these defendants objected to Medicare's dismissal. In addition, Vanderbilt never filed a claim with Medicare for Mr. Perry's unpaid bill. Thus, Medicare was never at risk with regard to those charges.
 
 
 21
 In the MSP statute Congress made Medicare coverage secondary to any coverage provided by private insurance programs. It did so in order to lower Medicare costs. H.R.Rep. No. 1167, 96th Cong., 2d Sess. 352-53, 389 (1980), reprinted in 1980 U.S.C.C.A.N. 5717-18, 5752; see also Baptist Memorial Hosp. v. Pan American Life Ins. Co., 45 F.3d 992, 997 (6th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 87, --- L.Ed.2d ---- (1995) (quoting Provident Life and Acc. Ins. Co. v. United States, 740 F.Supp. 492, 495 (E.D.Tenn.1990)) (by enacting MSP provisions, "Congress sought to reduce Medicare spending and to insure the continued fiscal integrity of the Medicare program").
 
 
 22
 The MSP provision relied upon by the district court states, "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with such paragraphs (1) and (2)(A)." 42 U.S.C. Sec. 1395y(b)(3)(A) (Supp. V 1993). The two subsections referred to provide that a group health plan may not take into consideration the fact that an individual covered by the plan (or the individual's spouse) is entitled to benefits under Medicare (subsection (1)(A)), and that Medicare payments are not to be made "with respect to any item or service to the extent that--(i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1)." (subsection (1)(B)).
 
 
 23
 When Medicare is not involved in an insurance coverage dispute, however, that program's fiscal integrity is not threatened, and the MSP statute does not apply. In Baptist Memorial Hosp., 45 F.3d 992, Horace Thomas, a retired postal worker, was a beneficiary under three separate health benefit plans: a Blue Cross/Blue Shield service benefit plan, offered through the Federal Employees Health Benefit program; Pan American Life Insurance Co., which covered him as a dependent of an employed person under a group policy obtained by his wife; and Medicare. After Mr. Thomas incurred substantial medical bills, a dispute arose between Blue Cross/Blue Shield and Pan American as to which was the primary payer. The district court held that Pan American's coverage was primary. In addition, the district court held that the MSP statute applied, and that Pan American was liable to Blue Cross/Blue Shield for double damages. Id. at 993-94, 998.
 
 
 24
 This court reversed. First, we held that Blue Cross/Blue Shield was the primary payer. Id. at 994-96. Second, Judge Nelson explained that the MSP statute did not apply, since Medicare was not threatened. Medicare benefits were clearly secondary to benefits payable by Pan American, and Medicare apparently had neither been asked to pay any expenses nor been made a party to the lawsuit. The MSP statute simply did not apply to the question of which private insurance carrier was the primary payer. The court concluded that "[t]he sole interest of Congress, as far as the statute discloses, was to provide that Medicare would not have to pay ahead of private carriers in certain situations. Where that interest is not affected--and it does not seem to be here--we see no reason why the pertinent contractual provisions should not be enforced in accordance with their terms." Id. at 996-98.
 
 
 25
 Baptist Memorial Hospital is determinative in this case. The Fund never claimed Medicare was the primary payer of Mr. Perry's medical expenses. Also, the Fund conceded that its coverage did apply to these expenses. It denied payment of the charges in question because the Estate was not legally obligated to pay them. Thus, the continued fiscal integrity of the Medicare program was not jeopardized. In fact, Medicare was at no risk whatsoever after the district court granted the Secretary of Health and Human Services's motion to dismiss. The MSP statute therefore does not apply, and the Fund's denial of payment cannot be an arbitrary and capricious violation of this federal law. Although Sec. 1395y(b)(3)(A) provides for "a private cause of action" for double damages when a primary payer does not pay benefits in accordance with the MSP statute's provisions, this language is irrelevant outside the scope of the MSP statute.
 
 
 26
 Echoing an argument first made by MetLife in the district court, the Estate contends that the Fund's position "must yield to the extent it contradicts federal law." This being so, the Estate argues, the district court must be affirmed because it refused to permit the primary payer provision of the plan to overrule the MSP statute. This argument relies on the holding in Colonial Penn Ins. Co. v. Heckler, 721 F.2d 431, 441 (3d Cir.1983), that an insurer has no vested right to maintenance of Medicare's status quo. In Heckler the insurer objected to the retroactive implementation of regulations that altered its existing contractual obligations to its policyholders. The court held that an insurer that makes its coverage subject to "the whim of Congress" risks a change in the Medicare laws. Id.
 
 
 27
 From this holding the Estate constructs an argument that the Fund's plan for identifying the primary payer in a situation such as the one presented here contradicts provisions of the MSP statute describing which of two possible payers must be considered primary. This argument fails for the same reason that any argument based on the MSP statute would fail: that statute is inapposite here. This court held in Baptist Memorial Hospital that when no claim is being asserted against Medicare, the MSP statute and implementing regulations do not affect contractual regulations under which one insurer's coverage is secondary to that of another. 45 F.3d at 996. In this case, the Fund never claimed or sought a ruling that it was secondary to Medicare. In fact, only the Estate sued the Secretary of Health and Human Services as Medicare administrator, and then quickly dismissed him as a defendant. The MSP statute has no application to the dispute between the Estate, the Fund and MetLife.
 
 
 28
 This district court erred in awarding double damages based on the MSP statute.
 
 C.
 
 29
 Because the district court made its attorney fee determination on the basis of erroneous legal conclusions, the court abused its discretion in awarding such fees.
 
 III.
 
 30
 This is a strange lawsuit. Presented with a claim that the state court having jurisdiction over the matter held was barred, the Estate sought recovery of twice the amount of the claim from two ERISA-controlled health care plans. The Fund's plan clearly provided that it was permitted to pay only those medical expenses that the participant or beneficiary was legally obligated to pay. Although the question is not before us, it appears that the GE plan funded through MetLife contained a similar prohibition against paying claims that the beneficiary was not legally obligated to pay. Faced with no possibility of being required to pay Vanderbilt's bill, the Estate pressed on, seeking a windfall from any and all entities that might have been required to pay the claim except for the legal bar.
 
 
 31
 There is a very good reason for the plan provision excluding benefits which a beneficiary or plan participant is not legally obligated to pay. A welfare plan under ERISA, including a plan for the payment of medical expenses, is maintained for the benefit of all plan participants and beneficiaries. A windfall to a beneficiary such as the Estate, consisting of the payment of expenses that the beneficiary is not legally obligated to pay, would reduce the assets of the plan available for payment of expenses incurred by other participants and beneficiaries who incur legally enforceable medical expenses.
 
 CONCLUSION
 
 32
 The district court did not have the benefit of our decision in Baptist Memorial Hospital at the time it rendered its decision. Nevertheless, it is clear that the Fund, not the Estate, was entitled to judgment as a matter of law on the undisputed facts in the record. The district court should have granted summary judgment in favor of the Fund. FED. R. CIV. P. 56(c).
 
 
 33
 Upon remand the district court will dismiss this action against the Fund. All other defendants have been dismissed by previous orders of the district court, from which the Estate has not appealed.
 
 
 34
 REVERSED.