HARRIS CORPORATION, Plaintiff-Appellant, Cross-Appellee,

v.

HUMANA HEALTH INSURANCE COMPANY OF FLORIDA, INC., a Florida corporation, Defendant-Appellee, Cross-Appellant.

No. 99-14906.

United States Court of Appeals,

Eleventh Circuit.

June 6, 2001.

Appeals from the United States District Court for the Middle District of Florida. (No. 98-00470-CIV-ORL-22), Anne C. Conway, Judge.

Before HULL, RONEY and GOODWIN[*], Circuit Judges.

PER CURIAM:

Two health insurance plans provided coverage for the same individual. The district court held that the plan of the Harris Corporation ("Harris") was primary, and not entitled to recover its expenditures on behalf of that individual from the plan of Humana Health Insurance Company of Florida, Inc. ("Humana"). After review, we affirm.

## I. BACKGROUND

Margaret Shallenberger, a Harris employee, enrolled in the Harris plan on November 4, 1991. At that time, she was already enrolled in the Humana plan as the wife of an employee of the City of Ft. Lauderdale, whose coverage under Humana had commenced in 1990. On May 23, 1992, Shallenberger became ill and qualified for and elected to purchase long-term disability benefits in connection with her Harris employment. On July 1, 1994, she became entitled to Medicare A and B coverage based upon her disability and illness. She died on December 4, 1995.

From the time Shallenberger became eligible for Medicare coverage in July 1994 through her death in December 1995, Harris paid approximately $780, 267.88 in benefits on her behalf and recovered approximately $13,643.99 from various providers.[1] Harris first submitted a claim for reimbursement of these expenditures to Medicare, which declined to pay and noted Shallenberger's dependent coverage through

---

[*]Honorable Alfred T. Goodwin, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]Although it appears that Harris also paid all benefits on behalf of Shallenberger after she became ill in February 1992 and before her Medicare eligibility in July 1994, Harris does not seek reimbursement from Humana of any amounts paid prior to Shallenberger's Medicare eligibility in July 1994.

Humana. Thereafter, Harris submitted a claim for reimbursement to Humana, which Humana declined to pay, and this litigation commenced.

Harris and Humana each had specific language in their respective health plans intended to define the priority of benefits when benefits appeared to be available under two or more plans. The Harris plan did not contain an "internal coordination of benefits" paragraph, but contained an explanation of "nonduplication." The nonduplication provision did not deal with the situation of a Harris covered employee who was also entitled to benefits under a plan in which her spouse was an employee beneficiary.

The Humana plan, however, contained a "Coordination of Benefits Provision," which included: "1. A plan which does not contain a coordination of benefits provision is considered to determine its benefits before a plan which does contain a coordination of benefits provision." Thus, under this language, the Humana plan would have the advantage if a dispute arises with another plan not having a "COB" provision.

In interpreting the relevant plan language, the district court noted that, "as regards Harris employees, there is nothing in the Harris plan that states that other plans (such as Humana's) are primary under any circumstances." After concluding that the Harris plan contained no "coordination of benefits provision," and that the Humana plan did contain such a provision, the court held that the Harris plan is primary. Accordingly, the district court granted summary judgment in favor of Humana and entered a take nothing final judgment against Harris.

On appeal, Harris does not challenge the district court's findings with respect to the plain language of the above provisions in the two insurance plans and the priority of payment established by those provisions. Instead, Harris contends that the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b), operates to reverse the priority of payment created by those provisions. As such, Harris contends that the district court erred in dismissing count one of its amended complaint for double damages against Humana under the Medicare Secondary Payer statute, and in granting summary judgment in favor of Humana based upon the priority created by the plan language without regard to the Medicare Secondary Payer statute.[2]

## II. DISCUSSION

---

[2] The dismissal of count one of Harris's amended complaint is reviewed by this Court *de novo*. *See Galindo v. ARI Mutual Ins. Co.,* 203 F.3d 771, 774 (11th Cir.2000). This Court also reviews *de novo* a district court's grant of summary judgment, applying the same standards as the district court. *Harris v. H&W Contracting Co.,* 102 F.3d 516, 518 (11th Cir.1996). "The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and a summary judgment is to be entered if the evidence is such that a reasonable jury could find only for the moving party." *Hilburn v. Murata Elec. North America, Inc.,* 181 F.3d 1220, 1225 (11th Cir.1999).

On appeal, Harris claims that the Medicare Secondary Payer statute makes Humana primarily liable for the costs of Shallenberger's health care and entitles Harris to double damages from Humana arising out of its expenditures on Shallenberger's behalf. Thus, Harris contends that the district court erred with regard to the Medicare Secondary Payer statute in: (1) dismissing count one of its amended complaint and (2) finding Humana secondary to Harris and granting summary judgment in favor of Humana.

*A.      The Medicare Secondary Payer Statute*

Prior to 1981, Medicare coverage was generally primary to coverage under an employee health benefit plan. *Baptist Memorial Hosp. v. Pan American Life Ins. Co.,* 45 F.3d 992, 996 (6th Cir.1995). "As a cost-cutting measure, however, Congress eventually enacted a series of amendments designed to make Medicare a 'secondary' payer with respect to such plans. These amendments have been codified as 42 U.S.C. § 1395y(b), which is referred to as the 'Medicare as Secondary Payer' ('MSP') statute." *Id.* (quoting *Health Ins. Ass'n of America v. Shalala,* 23 F.3d 412, 414 (D.C.Cir.1994)); *see also Perry v. United Food and Commerical Workers District Unions,* 64 F.3d 238, 243 (6th Cir.1995)("In the MSP statute Congress made Medicare coverage secondary to any coverage provided by private insurance programs. It did so in order to lower Medicare costs.").

In order to make Medicare secondary to such private insurance plans, the MSP statute provides that a group health plan may not "take into account" the fact that an individual or that individual's spouse, who is covered by the plan by virtue of the individual's current employment status, is entitled to benefits under Medicare in covering claims. 42 U.S.C. § 1395y(b)(1)(A)(i)(I). Specifically, 42 U.S.C. § 1395y(b)(1)(A)(i)(I) provides:

A group health plan—

(I) may not take into account that an individual (or the individual's spouse) who is covered under the plan by virtue of the individual's current employment status with an employer is entitled to benefits under this subchapter under section 426(a) of this title, ...

42 U.S.C. § 1395y(b)(1)(A)(i)(I). Thus, the MSP statute prohibits private insurers providing coverage as a result of an individual's *current* employment status from making Medicare primary to its coverage for that individual or that individual's spouse. Instead, Medicare is the "secondary payer" with respect to claims by an individual who is entitled to benefits under Medicare and also covered by private insurance as a result of the current employment status of that individual or that individual's spouse. The MSP statute contains no similar provision with respect to private insurance plans covering such individuals for reasons *other* than

current employment status. Thus, private plans covering such individuals for reasons other than current employment status of that individual or that individual's spouse *may* make their coverage secondary to Medicare when those individuals are simultaneously eligible for Medicare.

The MSP statute provides a private cause of action for double damages against insurance carriers covering individuals by virtue of such current employment status that fail to provide for payment primary to Medicare consistent with the statute's mandate. 42 U.S.C. § 1395y(b)(3)(A). Specifically, the statute provides:

> (A) Private cause of action
>
> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with such paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A); *See also Baptist Memorial Hosp.,* 45 F.3d at 998 ("Where a hospitalization plan that is primary to Medicare under the MSP statute fails to provide for primary payment in accordance with the statute, a private cause of action exists for damages 'in an amount double the amount otherwise provided.' ").

### B. *Private Insurers Vis-A-Vis Medicare*

We first apply the MSP statute to each private insurer vis-a-vis Medicare. Because Shallenberger's coverage through Humana after July 1, 1994, when she became eligible for Medicare, was the result of her husband's then *current employment status* with the City of Ft. Lauderdale, the MSP statute makes Humana's coverage primary to Medicare. Humana does not dispute its primary status vis-a-vis Medicare.

In contrast, because Harris covered Shallenberger during the same time period as an inactive former employee and not as a result of her current employment status (or that of her spouse), the MSP statute did not prevent Harris from making its coverage secondary to Medicare or, in other words, in making Medicare the primary as opposed to secondary payer of her benefits vis-a-vis Harris. The parties do not appear to dispute Harris's claims that its plan contains a provision to this effect. Thus, after Shallenberger became eligible for Medicare, Harris became secondary vis-a-vis Medicare.

These priorities of each insurer vis-a-vis Medicare appear clear under the MSP statute.

### C. *Parties' Contentions*

The issue in this case, however, addresses what effect, if any, the MSP statute has on reordering the priorities of Harris vis-a-vis Humana under the factual circumstances of this case. Harris contends the MSP

statute not only reorders the priorities between private insurers and Medicare, but also between private plans once a covered individual becomes eligible for Medicare. Specifically, Harris argues that Humana became the primary payer *as between the two private insurance carriers* by virtue of the MSP statute because the statute requires Humana to pay in advance of Medicare, but allows Harris to pay after Medicare. Thus, Harris argues that it may maintain a private cause of action for double damages against Humana for its failure to reimburse Harris according to its primary status under the MSP statute.

Humana responds that the MSP statute was designed to save money for the Medicare program by establishing the priority of payment as between Medicare and private insurance carriers under certain circumstances. Humana claims that the MSP statute simply does not apply to determine the relative payment priority as between private insurance plans only and that the coordination of benefits terms of the plan documents control the priority of liability as between private carriers. Where Humana has refused to pay because of the terms of Harris's and Humana's private plans and has not refused to pay Shallenberger's medical expenses as a result of her Medicare eligibility, Humana argues that the statute does not affect its priority with respect to Harris and that Harris may not bring a private cause of action against it under the MSP statute.

D.      The Sixth Circuit Decisions

In accepting Humana's argument in this regard, the district court relied on two Sixth Circuit cases directly on point. In *Baptist Memorial Hosp. v. Pan American Life Ins. Co.,* 45 F.3d 992 (6th Cir.1995), Horace Thomas, a retired postal worker, was simultaneously covered for hospitalization by three separate entities. Blue Cross/Blue Shield provided coverage in connection with Thomas's former federal employment. Thomas was also covered by Pan-American as a dependent of his wife by virtue of her current employment. *Id.* at 993. Finally, Thomas was enrolled in Medicare. *Id.*

After an automobile accident, Thomas was hospitalized for several months, incurring a hospital bill of almost $600,000. Blue Cross/Blue Shield refused to pay the bill, claiming that Pan-American's dependent coverage was primary. Pan-American likewise refused to pay the bill, claiming that Blue Cross/Blue Shield was the primary payer as Thomas's former employer.

The hospital brought suit against both Blue Cross/Blue Shield and Pan-American, seeking a determination as to which insurer was primary. *Id.* Medicare was not joined as a party and the hospital apparently never demanded payment from Medicare. *Id.* Although the coordination of benefits provisions

of both plans demonstrated that the Blue Cross/Blue Shield coverage was primary to the Pan-American coverage, the district court entered summary judgment against Pan-American. The district court found that Pan-American became primary to Blue Cross/Blue Shield by virtue of the MSP statute. While Pan-American was not permitted to make Medicare primary to its coverage for Thomas because his coverage was based upon his wife's current employment status, Blue Cross/Blue Shield was permitted to do so and had done so. Based upon this priority under the MSP statute, the district court found Pan-American primarily responsible for Thomas's hospital bill.

On appeal, the Sixth Circuit reversed, finding that the MSP statute had no impact on the priority as between solely private insurers and did not trump the plan language adopted by the private insurers as to priority:

> What difference does the MSP statute make as far as priority of payment obligations between Blue Cross and Pan-Am is concerned? None at all, in our view, on the facts presented here. In precluding Pan-Am from making its coverage secondary to the coverage provided by *Medicare,* Congress did not purport to preclude either Pan-Am or Blue Cross from making the Pan-Am coverage secondary to the coverage provided by *Blue Cross.*
>
> * * *
>
> Medicare has no dog in this particular fight. Medicare has never been asked to pay anything, as far as we know, and has not been made a party to the lawsuit. Congress manifested no interest whatever in who would pay first as between private insurance carriers such as Pan-Am and Blue Cross. The sole interest of Congress, as far as the statute discloses, was to provide that Medicare would not have to pay ahead of private carriers in certain situations. Where that interest is not affected—and it does not seem to be here—we see no reason why the pertinent contractual provisions should not be enforced in accordance with their terms.

*Baptist Memorial,* 45 F.3d at 996 & 998 (emphasis in original).

In holding that the MSP statute did not affect the private contractual provisions adopted by the carriers, the Sixth Circuit noted that the National Association of Insurance Commissioners had developed a coordination of benefits rule specifically designed to adjust the private priorities to take into account the rules of the MSP statute regarding the primary status of certain plans vis-a-vis Medicare. *Id.* That provision operates to resolve the circularity involved where a primary payer under the coordination of benefits provisions is secondary to Medicare under the MSP statute and the secondary payer under the coordination of benefits provisions is primary to Medicare under the statute. *Id.* It does so by reversing the private order of priority so that the payer primary to Medicare under the MSP statute is also primary to the other private carrier under the private coordination of benefits provisions. *Id.* Where Blue Cross had not adopted such a provision and where the coordination of benefits provisions in place made Blue Cross primary, the court held

that the MSP statute did not reverse the order of priority and did not provide a private cause of action to recover double damages. *Id.*

The Sixth Circuit revisited the impact of the MSP statute on the priority of payment between private insurance carriers in *Perry v. United Food and Commerical Workers District Unions,* 64 F.3d 238 (6th Cir.1995). As in *Baptist Memorial,* the insured individual in *Perry* was eligible for Medicare benefits as a result of his disability and was simultaneously insured by two separate private insurance plans: (1) by the insurance plan of his former employer as a former employee and (2) by the insurance plan of his wife's current employer as a dependent. After the insured's large hospital bill went unpaid, the executor of the insured's estate filed suit in state court against both private insurers, Medicare, and the hospital. After the case was removed to federal court, both the hospital and Medicare were dismissed as defendants.

As in *Baptist Memorial,* the district court entered summary judgment against the insurance plan sponsored by the wife's employer despite the fact that the coordination of benefits provisions showed that the insurance plan of the insured's former employer was the primary payer. The district court found that the MSP statute: (1) made the wife's employer's plan primary because it was primary to Medicare under that statute, and (2) authorized a private cause of action against that plan for double damages. *Id.* at 241.

Again, the Sixth Circuit reversed. Relying on *Baptist Memorial,* the court held that the MSP statute does not affect the "contractual regulations under which one insurer's coverage is secondary to that of another" "when no claim is being asserted against Medicare." *Id.* at 244. The court noted that the wife's insurer "never contended that Medicare was the primary payer" and even conceded that its obligation was primary to that of Medicare. *Id.* at 243. Further, the court noted that the plan denied payment of the expenses only because it concluded that the insured's estate was not legally obligated to pay the hospital bill and not for any reason related to the insured's Medicare coverage. *Id.* at 244. Thus, the court held that where the fiscal integrity of the Medicare program was not jeopardized, the MSP statute had no application to the obligation of the wife's employer's insurer to pay the hospital bill at issue. *Id.*

E.      *Analysis*

We find the thorough analysis of the Sixth Circuit regarding the intent and limited operation of the Medicare Secondary Payer statute persuasive, and adopt the reasoning set forth in *Baptist Memorial Hosp. v. Pan American Life Ins. Co.,* 45 F.3d 992 (6th Cir.1995) and *Perry v. United Food and Commercial Workers District Unions,* 64 F.3d 238 (6th Cir.1995) with respect to the applicability of the MSP statute to

coverage disputes solely between private insurers.

Both Sixth Circuit cases are directly on point with respect to the facts of this case. As of July 1, 1994, Shallenberger was eligible to receive Medicare benefits as a result of her disability. Shallenberger was also covered by Harris between July 1, 1994 and her death in December 1995 based on her status as a former employee of Harris. Thus, Harris was entitled to make its benefits secondary to Medicare under the MSP statute. During the same time period, Shallenberger was covered as a dependent by Humana based on her husband's current employment status with the City of Ft. Lauderdale. Thus, Humana was primary to Medicare under the MSP statute. Harris has sued Humana claiming that Humana is responsible for Shallenberger's medical expenses as a result of its primary status vis-a-vis Medicare.

As in *Baptist Memorial,* Medicare is not a party to this case and the fiscal integrity of the Medicare program is not at risk. The instant suit is between solely private insurance plans and involves their priority vis-a-vis one another in connection with the payment of Shallenberger's medical expenses. As in *Perry,* Humana has never claimed that Medicare is the primary payer of Shallenberger's medical expenses in contravention of the priority created between it and Medicare under the MSP statute. Indeed, Humana has denied coverage based upon legal and equitable defenses to Harris's claim for reimbursement unrelated to Shallenberger's Medicare eligibility.[3] Because it is only the priority as between these two private insurance plans that is at issue in this case, the respective priority of the two insurers is not affected by the MSP statute. While Harris was free to alter the coordination of benefits of its plan to align the priority of its liability vis-a-vis Medicare with the priority of its liability vis-a-vis other private insurance plans, the MSP statute was not enacted to address such private priorities and does not operate to reprioritize the obligations of private insurance plans where the liability of Medicare is not at issue.

Contrary to Harris's argument that the Sixth Circuit cases are wrongly decided, the reasoning of both cases appears thorough and persuasive.[4] Harris does not dispute that the MSP statute was designed only to

---

[3]In addition to relying on its coordination of benefits provision to deny coverage, Humana also argues that Harris cannot obtain reimbursement from Humana because: (1) Harris's plan documents do not allow it to act as subrogee for Shallenberger for claims arising out of a disabling illness; (2) Harris is estopped from denying primary coverage after informing Shallenberger that it would continue to be primary to Medicare through 1995; and (3) Harris's notice to Humana of Shallenberger's claims almost one year after her death was untimely under Humana's plan documents.

[4]Harris also urges the Court to adopt the holding of a New York State case rejecting the Sixth Circuit decisions regarding the MSP statute. *See Cooperative Health Insurance Fund v. Blue Cross and Blue Shield,* 237 A.D.2d 963, 654 N.Y.S.2d 895 (N.Y.App.Div.1997). First, the facts of that case appear slightly different from the facts of *Baptist Memorial* and *Perry* which are on all fours with the facts in the

lower Medicare costs. Where Medicare's liability to pay health care expenses is not at issue, it follows that the statute would not operate to rearrange the priority of payment as between purely private insurance plans.

Furthermore, this conclusion does not render the private cause of action in the MSP statute superfluous. Indeed, both *Baptist Memorial* and *Perry* acknowledged the existence of such a private right of action in cases involving the failure of an insurance plan to make its coverage primary to Medicare as required by the statute. *See Baptist Memorial Hosp.,* 45 F.3d at 998 ("Where a hospitalization plan that is primary to Medicare under the MSP statute fails to provide for primary payment in accordance with the statute, a private cause of action exists for damages 'in an amount double the amount otherwise provided.' "); *Perry,* 64 F.3d at 244 ("Although § 1395y(b)(3)(A) provides for 'a private cause of action' for double damages when a primary payer does not pay benefits in accordance with the MSP statute's provisions, this language is irrelevant outside the scope of the MSP statute.").[5] For example, if Humana had been Shallenberger's only private insurer and had denied a timely claim for benefits based solely on her eligibility for Medicare, it appears that the MSP statute would afford Shallenberger a private cause of action for double damages against Humana. Further, it appears that Harris could assert a private cause of action for double damages against Humana acting on behalf of Shallenberger *if* Humana was primary to Harris under the private coordination of benefits provisions, Humana asserted no coverage defenses to Shallenberger's claims, and Humana refused to pay Shallenberger's medical expenses solely based on her eligibility for Medicare. A private cause of action for double damages in these contexts serves Congress' interest in the fiscal integrity of the Medicare program by deterring private insurers primary to Medicare under the statute from attempting to lay medical costs at the government's doorstep.

instant case. Even assuming that the New York case is indistinguishable from the instant case, the New York case summarily rejects the Sixth Circuit holdings regarding the inapplicability of the MSP statute to private payer disputes without any analysis. This summary conclusion by one state court does not appear to provide a sound basis for rejecting the thorough and persuasive analysis of the Sixth Circuit cases.

[5]Harris also argues that the district court's finding that the MSP statute applies only when the "fiscal integrity" of the Medicare program is jeopardized "flies in the face of the plain language of the statute—which contains no such limitation." The plain language of the statutory provision creating the private cause of action does expressly state that the cause of action exists when a plan fails to provide for primary payment "in accordance" with the Medicare as Secondary Payer provisions. Because *those* provisions dictate only the liability of private insurance plans *relative to the Medicare program,* it appears completely consistent with the plain language of the provision creating the private cause of action that such a cause of action exists only where a plan has failed properly to provide for its liability vis-a-vis Medicare. In all such cases, the fiscal integrity of the Medicare program that the MSP statute was designed to protect, would be at issue. Thus, the finding of the district court and the Sixth Circuit that the fiscal integrity of the Medicare program must be in jeopardy in order for the private cause of action to exist is not contrary to the plain language of the statute.

Under the particular facts of this case, however, the MSP statute does not appear to allow Harris to assert a private cause of action against Humana for its failure to reimburse it for Shallenberger's medical expenses. Humana has never claimed that it was not required to pay Shallenberger's claims because *Medicare* was responsible for them. Indeed, Humana appears to concede that it is primary to *Medicare* under the MSP statute with respect to Shallenberger's expenses. Instead, Humana has refused to reimburse Harris for the medical costs relying on Harris's status as the primary carrier under the plain language of the two insurance plans and asserting other legal and equitable defenses to coverage. Thus, the plain language of the insurance plans governs the priority of payment as between the two insurance companies in this case.[6]

### III. CONCLUSION

In sum, it appears that the district court correctly: (1) dismissed Harris's claim against Humana under the MSP statute and (2) relied on the plain language of the two insurance plans and disregarded the MSP statute in determining the priority of obligations as between Harris and Humana in granting summary judgment with respect to Harris's remaining claim.

AFFIRMED.

---

[6]Harris also argues on appeal that the district court erroneously entered a "final, take-nothing judgment" in favor of Humana—even assuming that Harris was the primary payer—because the amount of Harris's liability as the primary payer and Humana's liability as the secondary payer remained to be apportioned. After review of the record, we find that this argument lacks merit. Further, Humana has purported to file a "cross appeal," urging affirmance of the district court's entry of judgment in its favor on alternative grounds. In light of our affirmance of the district court's dismissal and summary judgment orders, any "cross-appeal" is moot.