Thomas C. WILLIAMS, et al. Plaintiffs–Appellants,

v.

WCI STEEL COMPANY, INC., et al. Defendants–Appellees.

No. 00–4363.

United States Court of Appeals, Sixth Circuit.

May 24, 2002.

Before DAUGHTREY and MOORE, Circuit Judges, and SIMPSON, District Judge.*

## OPINION

SIMPSON, District Judge.

Plaintiffs claim defendants violated Section 301 of the Labor Relations Management Act of 1947 ("LMRA") when they disproportionately distributed assets of a trust established to benefit plaintiffs and the distribution also incidentally benefitted plaintiffs' former employer, WCI Steel Company, Inc. ("WCI"). The district court granted defendants summary judgment, concluding the distribution of trust assets did not violate the terms of the collective bargaining agreement or any fiduciary duty owed the plaintiffs. For the reasons stated below, we **AFFIRM** the judgment of the district court.

### *FACTUAL AND PROCEDURAL HISTORY*

Plaintiffs Cook and Reber worked at a steel plant owned by LTV Steel Co.

---

* The Honorable Charles R. Simpson III, United States District Judge for the Western District of Kentucky, sitting by designation.

("LTV") from 1955 to February, 1995 and 1959 to June, 1995 respectively. They were members of defendant United Steelworkers of America, AFL–CIO, CLC ("United Steelworkers") while employed at the plant.

On August 30, 1988, LTV sold the plant to defendant WCI. At that time LTV was a debtor-in-possession in a Chapter 11 bankruptcy proceeding. If it had chosen to close the plant, it would have owed its employees substantial benefits pursuant to several collective bargaining agreements. Due to concern over the change in ownership's effect on plant employees, the sale was conditioned on an agreement to fund certain benefits if WCI shut down the facility and was unable to pay benefits to its employees. This Memorandum Agreement was incorporated into the 1988 collective bargaining agreement between United Steelworkers and WCI.

Under the 1988 Memorandum Agreement, $21,000,000 was placed in a Security Enhancement Trust ("SET") for the benefit of all employees working at that time ("Recipient Employees"). The SET's purpose was "to provide additional security to employees affected by the sale of the ... plant[ ] ... and to fulfill LTV Steel's obligation to certain employees under the LTV Steel–USWA Pension Plan ...." (1988 Mem. Agrmt.). The agreement provided that if WCI permanently closed the plant within seven years, the SET assets would be used to pay certain benefits to Recipient Employees if WCI did not have funds to pay those benefits. If WCI did not close the plant within seven years, the agreement mandated the SET assets "shall be allocated by the trustees to provide employee and/or retiree benefits for Recipient Employees and the SET shall be dissolved." (1988 Mem. Agrmt. ¶ I.D.) There were 1,773 Recipient Employees, including plaintiffs.

On November 2, 1990, United Steelworkers, LTV, and Bank One Trust Company entered into a trust agreement. It provided that Bank One would serve as trustee but would administer the trust at the discretion of defendant Raymond McDonald, appointed by United Steelworkers, and defendant Thomas Fair, appointed by WCI.

WCI continued to operate the plant seven years after it was purchased. At that time the SET assets totaled $28,769,257.63. Five hundred and eight of the original 1,773 Recipient Employees, including plaintiffs, no longer worked at the plant and were no longer represented by United Steelworkers. Therefore, the group of Recipient Employees consisted of 1,265 "active" Recipient Employees and 508 "nonactive" Recipient Employees.

On August 31, 1995, the seven-year period and the collective bargaining agreement between United Steelworkers and WCI expired and a 54–day strike began. In October 1995, United Steelworkers and WCI negotiated to end the strike. Their agreement provided that WCI make an initial contribution of $2,000,000 to a newly created Voluntary Employees' Beneficiary Association ("VEBA"). The VEBA established a fund from which WCI could satisfy its obligation to provide life and health benefits to retirees under a prior agreement. WCI also agreed to establish a defined benefit pension plan for retiring United Steelworkers represented employees, i.e., employees who worked at the plant on or after August 31, 1995. The parties further agreed to distribute the SET assets in the following manner: 1) $2,000,000 to reimburse WCI for its initial VEBA contribution; 2) $14,000,000 to the defined pension benefit plan; and 3) $12,380,507 to Recipient Employees as "special bonuses" determined by a formula based on years of service with WCI. The

formula did not take years of service with LTV into account. The end result of the asset distribution was that non-active Recipient Employees, who constituted 28.65% of all Recipient Employees, received 10.21% of the SET assets. The SET asset distribution was memorialized in a 1995 Memorandum Agreement, which was incorporated in the 1995 collective bargaining agreement between United Steelworkers and WCI.

On January 23, 1996, plaintiffs sued WCI, United Steelworkers, Fair and Mc-Donald in the Northern District of Ohio seeking benefits under the SET and damages for breach of fiduciary duty under the Employee's Retirement Income Security Act ("ERISA"), Section 502(a), LMRA Section 301, and Ohio law. The district court dismissed all of plaintiffs' claims. We affirmed the dismissal of plaintiffs' ERISA and Ohio law claims. *See Williams v. WCI Steel Co., Inc.,* 170 F.3d 598 (6th Cir.1999)(*"Williams I"*). We remanded plaintiffs' LMRA claim for further proceedings.[1] *Id.*

In holding plaintiffs had not stated a claim under ERISA, we found the 1988 Memorandum Agreement did not constitute an "employee benefit plan" entitled to ERISA protection because a reasonable person could not ascertain the "intended benefits and procedures for receiving benefits" under the plan. *Id.* at 603. We determined

> [a]t best, the Memorandum Agreement promised some form of benefits to plaintiffs. However, nothing in the Memo-randum Agreement specified the extent of the benefits, or whether those benefits were to come in the form of medical coverage, insurance, vacation, unemployment, or other type of benefits.... At best, the Memorandum Agreement merely states that a decision would be made on what benefits the Recipient Employees would receive after the seven-year period.

*Id.* at 603–04.

Further, in remanding plaintiffs' LMRA claim, we also found the 1995 collective bargaining agreement did not supersede the 1988 collective bargaining agreement because plaintiffs' rights under the 1988 Memorandum Agreement had vested. We explained that

> [w]hile a union may bargain away non-vested retiree benefits in favor of more compensation for active employees, it may not do such with the vested rights of its retirees.

At the very least, a reasonable reading of the Memorandum Agreement supports plaintiffs' interpretation that as "Recipient Employees," they were promised "the assets remaining in the SET" at the expiration of the seven-year period. By allocating the trust residue to new WCI employees who were not part of the defined class of "Recipient Employees," material issues of fact clearly exist as to whether defendants breached their § 301 obligations to plaintiffs.[2] On this ground alone, we believe that the district court's grant of

---

1. Section 301 of the LMRA reads:
   Suits for the violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court on the United States having jurisdiction of the parties, without respect to the amount in con-

troversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a).

2. This time on appeal plaintiffs do not argue that SET funds were diverted to new WCI employees. They now claim the funds were improperly diverted to WCI.

summary judgment to defendants was improper.

Plaintiffs ... do not claim ... that they have vested rights to a particular benefit, such as health insurance or life insurance. Rather, plaintiffs are contending that they had a vested right in the distribution of the trust resources solely within the limited, defined named beneficiaries in the Memorandum Agreement. When the trustees allocated the trust assets to members outside of the Recipient Employees, they infringed on plaintiffs' vested rights under the agreement.

*Id.* at 605–07 (internal citations omitted).

Upon remand the district court granted defendants summary judgment, finding the distribution of SET assets did not violate the 1988 Memorandum Agreement or any fiduciary duty owed to the plaintiffs. Plaintiffs now appeal that decision.

### DISCUSSION

#### 1. Standard of Review

Grants of summary judgment are reviewed *de novo*. *See Breck v. Michigan,* 203 F.3d 392, 395 (6th Cir.2000).

#### 2. The Distribution to WCI

In *Williams I* we held plaintiffs had a "vested right in the distribution of trust resources solely within the limited, defined named beneficiaries of the Memorandum Agreement." *Williams I,* 170 F.3d at 606. The district court reiterated this holding in determining "[i]f any SET assets were distributed to non-Recipient Employees, the Plaintiffs would prevail on their claim ...." *Williams v. WCI Steel Co., Inc.,* 119 F.Supp.2d 710, 718 (N.D.Ohio 2000). It then found plaintiffs "failed to provide any evidence that SET assets were used for the benefit of non-Recipient Employees." *Id.*

The district court's ruling was not erroneous. In concluding the SET assets were not used to benefit non-Recipient Employees, the district court first determined that WCI's contribution to the VEBA provided "some benefit" to the Recipient Employees. *Williams,* 119 F.Supp.2d at 719. The court next found no employees who were not Recipient Employees received benefits from the VEBA funded by SET assets. *See id.* Therefore, the court concluded "no SET assets were diverted from Recipient Employees." *Id.*

Plaintiffs argue the trustees diverted SET assets from Recipient Employees by allocating $2,000,000 from the SET to reimburse WCI for its initial VEBA funding, which provided life and health benefits to retirees. They claim the Recipient Employees did not benefit from this disbursement because WCI had a pre-existing obligation to provide such benefits, therefore the Recipient Employees did not receive anything to which they were not already entitled. Thus, according to plaintiffs, the disbursement violates the 1988 Memorandum Agreement because it benefitted WCI, a non-Recipient Employee.

This argument elevates form over substance. The $2,000,000 SET distribution was made in "exchange for the agreement of WCI Steel to ... maintain[ ] the VEBA ... and making the [$2,000,000] contribution thereto for the benefit of [the Recipient Employees]." (1995 Mem. Agrmt. ¶¶ 1(b), 4. The distribution is therefore better characterized as a distribution to the VEBA made in two stages, 1) an initial payment from WCI and 2) a payment to WCI from the SET, rather than a "reimbursement" to WCI. The 1988 Memorandum Agreement merely requires the SET assets be "allocated by the trustees to provide employee and/or retiree benefits for Recipient Employees and the SET

shall be dissolved." (1988 Mem. Agrmt. ¶ I.D.). In *Williams I* we found a violation of the agreement would occur only if "the trustees allocated *the trust assets* to members outside of the Recipient Employees." *Williams I,* 170 F.3d at 607 (emphasis added). Thus, the incidental benefit conferred on WCI by the $2,000,000 distribution did not violate the 1988 Memorandum Agreement because the assets were allocated to the Recipient Employees in the form of retiree benefits. The district court did not err.

Plaintiffs' argument that the Recipient Employees did not benefit from the distribution is without merit. WCI's obligation to provide life and health benefits to retirees was unfunded prior to the 1995 collective bargaining agreement. Thus, payment of these benefits was entirely dependent on WCI's financial health. The VEBA was established to provide a secure source of future funding for these benefits. The SET distribution therefore conferred on the Recipient Employees the benefit of securing their future receipt of health care and life insurance benefits.

### 3. *The Distribution Between Active and Non–Active Recipient Employees*

■ The district court held the disproportionate distribution of trust assets between active and non-active Recipient Employees did not violate the 1988 Memorandum of Agreement because the non-active Recipient Employees did not have a right to any "particular benefit," but only "a right to receive some unspecified benefit from the SET upon distribution of its assets." *Williams,* 119 F.Supp.2d at 720. Thus, "any agreement on a distribution for SET assets did not affect those vested rights so long as the retired Recipient Employees received some benefit from the SET." *Id.* This holding is in accordance with the specific language of the 1988 Memorandum Agreement and *Williams I.* It therefore is not erroneous.

Plaintiffs argue the SET asset distribution rendered their benefit "illusory," and thus violated the 1988 Memorandum Agreement, because, as non-active Recipient Employees, they only received roughly 10% of the assets. Plaintiffs rely on *Int'l Union v. Loral Corp.,* 107 F.3d 11 (6th Cir.1997)(unpublished disposition) in arguing the district court's construction of the 1988 Memorandum Agreement was nonsensical because plaintiffs would not have accepted an illusory benefit.

First, plaintiffs' reliance on *Loral* is misplaced. In *Loral* we rejected a defendant-employers' construction of ambiguous language in a collective bargaining agreement because it rendered a retired employee's benefits under the agreement illusory. We explained "[r]etiree benefits are in a sense 'status' benefits which, as such, carry with them an inference ... that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree." *Id.* (quoting *Int'l Union v. Yard–Man, Inc.,* 716 F.2d 1476, 1482 (6th Cir.1983)). However, we made clear that "[t]he 'Yard–Man inference,' as this principle has come to be called, is certainly not dispositive of a particular case. *It cannot contradict the express text of the [collective bargaining agreement] or plan documents." Id.* (emphasis added). Here, the 1988 Memorandum Agreement's express language clearly provides that SET assets "shall be allocated by the Trustees to provide employee and/or retiree benefits for Recipient Employees." In affirming the dismissal of plaintiffs' ERISA claim, we said: "nothing in the Memorandum Agreement specified the extent of the benefits. At best, the Memorandum Agreement merely states that a decision would be made on what benefits the Recipient Employees would receive after the seven year period." *Williams I,* 170 F.3d at 603–04.

Second, plaintiffs ignore the fact that the non-active Recipient Employees received a substantial benefit from the SET in the form of security if the plant closed within seven years after the sale. This benefit was akin to insurance, and that it was not needed does not lessen its value. Further, non-active Recipient Employees also received special bonuses from the SET totaling almost $3,000,000. There is therefore no basis on which to conclude the distribution rendered the non-active Recipient Employees' benefits under the 1988 Memorandum Agreement illusory.

### 4. *The Trustees' Fiduciary Duty*

The district court relied solely on *United Mine Workers Health & Ret. Funds v. Robinson*, 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982), in first holding "neither a reasonableness nor a fiduciary standard apply to the decisions of the trustees in distributing SET assets among Recipient Employees." *Williams*, 119 F.Supp.2d at 722. Although the parties dispute whether *Robinson* forecloses the application of fiduciary standards to this case, the issue need not be resolved here because the district court also correctly determined that "[e]ven if defendants were subjected to a fiduciary standard, or alternatively a standard of reasonableness, ... no breach or unreasonable conduct occurred." *Id.*

▮ Plaintiffs first argue the trustees had no discretion to favor one group of beneficiaries over another and therefore violated their duty of impartiality by doing so. "When there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them." RESTATEMENT (SECOND) OF TRUSTS, § 183

(1959). However, "[b]y the terms of the trust the trustee may have discretion to favor one beneficiary over another." *Id.* at cmt. a; *see also Mahoney v. Board of Trustees*, 973 F.2d 968, 971 (1st Cir.1992)(a trustee's "'duty of impartiality ... ordinarily' gives him 'considerable discretion' in deciding the 'balance' between successive beneficiaries.")(citing 3A SCOTT ON TRUSTS § 232).

The 1988 Memorandum Agreement provides only that SET assets "be allocated by the trustees to provide employee and/or retiree benefits for Recipient Employees." (1988 Mem. Agrmt. ¶ I.D.). Thus, the trustees were implicitly granted wide discretion in determining both the nature of the benefits and their distribution among the Recipient Employees.[3] In such a case "[t]he court will not control the exercise of such discretion, except to prevent the trustee from abusing it." RESTATEMENT (SECOND) OF TRUSTS, § 183 cmt. a (1959).

This circuit reviews trustees' discretionary actions "to determine only if they were arbitrary or capricious." *Abbott v. Pipefitters Local Union No. 522 Hosp., Medical, and Life Benefit Plan*, 94 F.3d 236, 240 (6th Cir.1996). "A determination by plan trustees will not be found to be arbitrary or capricious if it is rational in light of the plan's provisions." *Id.* at 240 (citing *Perry v. United Food and Commercial Workers Dist. Unions 405 and 422*, 64 F.3d 238, 242 (6th Cir.1995)). "This standard is the least demanding form of judicial review of administrative action .... When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (citing *Perry*, 64 F.3d at 242).

---

**3.** Plaintiffs argue trustees do not have discretion to favor one beneficiary over another unless expressly provided by the trust. However, in *Abbott v. Pipefitters Local Union No. 522 Hosp., Medical, and Life Benefit Plan*, 94

F.3d 236, 240 (6th Cir.1996), we upheld a trustee's differential treatment of beneficiaries even though the trust did not expressly authorize such "discrimination." *See Abbott*, 94 F.3d at 241.

Defendants provided detailed reasons for the unequal allocation of benefits under the special bonus program. *See Williams,* 119 F.Supp.2d at 723. If the bonus formula had been based on years of service with both LTV and WCI, it would have disproportionately weighted the years of service with LTV over the years of WCI service. As the SET was established to protect against the risk of WCI's failure, the defendants' choice to reward employees who had voluntarily accepted that risk by staying with WCI was rational.

Further, defendants claim that they excluded non-active Recipient Employees from the defined benefit pension plan because it is standard in the steel industry, and among pension plans in general, that retirees are covered by the retirement plan in place at the time of their retirement. This statement is undisputed, and we agree with the First Circuit's holding that decisions based on industry practice are not unreasonable. *See Mahoney,* 973 F.2d at 974.

Therefore, because "there was a reasonable basis for the trustees' decision" the district court did not err in finding no abuse of discretion in the SET asset distribution. *See Abbott,* 94 F.3d at 241; *see also Mahoney,* 973 F.2d at 969–74 (upholding as "nonarbitrary" trustees' decision to provide greater pension benefits to active than retired employees where the trustee "followed the recommendation of the actuary and the union" and set pensions "on the basis of comparisons with [other] pension plans.").[4]

### CONCLUSION

For the forgoing reasons, we find the district court did not err in granting defendants summary judgment, because the SET asset distribution did not violate the terms of the collective bargaining agreement or any fiduciary duty owed the plaintiffs. We therefore **AFFIRM** the judgment of the district court.

---

4. Plaintiffs also argue the trustees abused their discretion because a conflict of interest resulted from their desire to end the strike. However, the active Recipient Employees also had an interest in ending the strike, therefore it was within the trustees' fiduciary duties consider this factor.