**Kimberly MEYER, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, et al., Defendants.**

No. 2:03–CV–061.

United States District Court,
S.D. Ohio,
Eastern Division.

July 9, 2004.

Tony C. Merry, Palmer Volkema & Thomas, Columbus, OH, for Plaintiff.

Charles Scott Lanz, Manchester, Bennett, Powers & Ullman, Youngstown, OH, for Defendants.

### OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court on the parties' cross-Motions for Summary Judgment on the administrative record. (Doc. #11 and #13). For the reasons that follow, the Plaintiff's motion is granted, in part, and the Defendants' motion is denied.

### I.

Plaintiff, Kimberly Meyer ["Plaintiff"], brings this action pursuant to the Employee Retirement Income Security Act ["ERISA"], 29 U.S.C. § 1132(a)(1)(B), seeking long-term disability benefits under a plan maintained by her former employer, Defendant Shell Oil Company. Defendant Metropolitan Life Insurance Company ["MetLife"] is the Claims Fiduciary. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Plaintiff was employed at the Shell Oil Company Chemical Plant in Belpre, Ohio as a Drafting Coordinator. (Administrative Record at 52). Plaintiff's job required her to sit for five to six hours, stand and walk for one to two hours, use her hands and occasionally lift up to ten pounds. (Id.). Plaintiff is a college graduate with a bachelor's degree in human resources. (Id. at 53). As an employee of Shell, Plaintiff was eligible to participate in the company's short and long-term disability plans.

On November 10, 2000, Plaintiff was involved in an automobile accident. As Plaintiff was turning into the parking lot of her employer, her vehicle was rear-ended by another automobile which, according to Plaintiff, was traveling at a speed of approximately sixty miles per hour. (Id. at 34). Plaintiff claims to have suffered injury to her back as a result of the accident. Plaintiff further claims that the accident aggravated an earlier back injury she experienced in 1993, also as a result of an automobile accident. (Id.). Plaintiff was forty-two years old at the time of the November 2000 accident.

Following the accident in November 2000, Plaintiff underwent various medical tests. CT scans performed were normal, but an MRI of Plaintiff's lower back revealed "[h]yperlordosis with an old L1 compression and degenerative disc changes at the T12–L1 level (no acute fracture detected)." (Admin. R. at 67). Plaintiff's physician, Dr. Powderly, issued a disability certificate for Plaintiff from November 10 to December 21, 2000, stating that Plaintiff could return to work on December 22, 2000, pending a consult with

Dr. Zerick, a neurosurgeon. (*Id.* at 72). Dr. Zerick concluded that Plaintiff was not a candidate for surgery and referred her to twelve sessions of physical therapy. (*Id.* at 94). Plaintiff received short-term disability benefits for one year following the November 2000 accident.

A physical therapy report dated January 3, 2001 states that Plaintiff "reports no serious injury, however, she has had low back pain that feels like a dull ache in the bilateral lumbar region ever since the motor vehicle accident." (*Id.* at 96). According to the report, Plaintiff described the pain as "constant" and "worse while sitting and rising from sitting." (*Id.*). By January 15, 2001, Plaintiff reported to her physical therapist that she was "feeling better." (*Id.* at 100). Plaintiff cancelled three out of the next five scheduled therapy sessions due to a cold and inclement weather. (*Id.* at 100–01). Plaintiff did not finish her physical therapy sessions.

On January 23, 2001, Plaintiff's physician, Dr. Powderly, completed a report in support of Plaintiff's application for disability benefits. Dr. Powderly characterized Plaintiff as suffering from a "[d]ecreased range of motion of the lumbar spine with history of compression fracture in 1993. Plaintiff has chronic back pain." (*Id.* at 102). At the request of Defendant Shell, Plaintiff was examined by Dr. Randal Heavner. Dr. Heavner also completed a report in support of Plaintiff's application for disability benefits, stating that Plaintiff suffered from chronic back pain. (Admin. R. at 103). Dr. Heavner further stated that Plaintiff's decreased range of motion and pain limited her ability to lift, sit or stand.[1] (*Id.*).

The Administrative Record details Plaintiff's contacts with Dr. Powderly from February to October 2001. None of the contacts references treatment for Plaintiff's back condition. On November 6, 2001, Plaintiff saw Dr. Powderly for low back pain. She was given a prescription for Celebrex. (*Id.* at 62). Plaintiff saw Dr. Powderly again in November and December 2001 for conditions unrelated to back pain. (*Id.* at 60).

Plaintiff applied for long-term disability benefits on December 12, 2001. With respect to long-term disability benefits, the Plan states:

"Disability" or "Disabled" means that, due to an Injury or Sickness, you require the regular care and attendance of a Doctor and:

1. during the Elimination Period and the 24–month period immediately following the Elimination Period, you are unable to perform each of the material duties of your regular job or a Comparable Occupation with the Employer which the Employer will have offered to such Employee, provided a Comparable Occupation is available; and

2. after the first 24 months of benefit payments, you must also be unable to perform each of the material duties of any gainful work or service for which you are reasonably qualified taking into consideration your training, education, experience and past earnings.

"Elimination Period" means the number of consecutive days of Disability before Long Term Disability Benefits become payable under This Plan....

(Admin. R. at 12). Plaintiff's Elimination Period was the one year period during which she received short-term disability benefits.

Dr. Powderly completed a form in support of Plaintiff's request for long-term

---

1. It is undisputed that additional records from Dr. Heavner are not part of the Administrative Record because the records were apparently destroyed in the September 11, 2001 attack.

disability benefits, in December 2001. Dr. Powderly states that Plaintiff has the ability to sit for two hours; stand for zero hours; and walk for zero hours. Without any explanation, Dr. Powderly concluded that Plaintiff was unable to perform her job duties and that her condition would not improve. (*Id.* at 88). Dr. Powderly also answered negatively in response to a question as to whether he had advised Plaintiff to engage in any forms of therapy. (*Id.*).

On February 5, 2002, MetLife denied Plaintiff's request for long-term disability benefits. The letter denying benefits states, in pertinent part:

All of the clinical findings provided are consistent with an old back injury which you reported occurred in 1993. You further reported that you had returned to work after this injury.

Dr. Powderly's note of 11/7/00 [2] states that "patient has now recovered sufficiently to be able to return to regular work duties on 12/22/00." In the restrictions section Dr. Powderly wrote "pending Dr. Zerick's evaluation."

You have

reported that you did attempt to return to work in December of 2000 but after evaluation by the Company doctor you were not allowed to return. I have attempted to confirm this information with your employer, however [*sic*] the site where you were employed has since closed and the Corporate Office has no record of a return to work in your file.

In summary, although you may have complaints of low back pain there are no clinical findings that would correlate with your inability to perform your job as a CAD Operator which is classified as sedentary.

Based on this information you[r] claim for Long Term Disability benefits is being denied effective 11/9/00.

(Admin. R. at 118).

Plaintiff appealed this decision and the matter was referred to MetLife's independent review appeals unit on April 2, 2002. (Admin. R. at 121). In connection with her appeal, Plaintiff presented a statement from Defendant Shell's human resources manager, which states:

KRATON polymers was created in March, 2001 when Shell Chemical Company sold its elastomers business to a private equity firm.

Prior to the sale, Kimberly D. Meyer applied for a Shell Disability Pension on the basis of being permanently disabled from performing the duties of her job. The Shell Disability Pension process required certification of her disability by both her personal physician and a company-appointed physician. These certifications were received and Ms. Meyer's application for a Disability Pension was approved by Shell Chemical Company. She retired from the Belpre Plant on a Shell Disability Pension effective March 1, 2001.

(Admin. R. at 104).

Also in connection with her appeal, Plaintiff submitted a March 20, 2002 office note of Dr. Heavner, the physician who examined Plaintiff at Shell's request. The note states:

[Plaintiff] is here today for reevaluation. She was a former Shell employee and has been disabled due to chronic low back pain. She has a history of L4 compression fracture approximately ten years ago and was disabled on November 10, 2000, when she was hit from behind in a motor vehicle accident. She has had significant low back pain since

---

**2.** The letter denying benefits incorrectly says November 7, 2000, which would be before the accident. Dr. Powderly's office note says November 17, 2000, which is after the accident.

that time. She has been unable to return to work because of persistent severe pain that doesn't allow her to sit or stand for more than an hour at a time. She has to lay down to relieve her pain. She sees Dr. Powderly as her family doctor. Her job at the plant was a computer desk type of job. She states that she is unable to do some normal household duties like running a sweeper, or significant activity, because it aggravates her back. She takes Vioxx for pain, but this does not give her significant relief. She has been through trials of physical therapy without any relief. She has seen neurosurgery regarding this. She received a letter from her disability company that was requesting additional verification of her disability. I saw her as the plant physician at Shell Chemical and agreed with her disability status approximately two years ago. The records from Shell were transferred to Houston when Shell was bought by Kraton and, in attempts to retrieve the records, it appears at this time that those records may have been stored in New York and lost in the 9/11 incident. Her physical exam today is significant for marked degree of limitation of motion in her back. She is only able to forward bend to about forty-five degrees because of pain, and she has limited range of motion to either side because of pain as well.

**Impression:** Chronic low back pain with history of L4 compression fracture.

**Plan:** I would agree from the plant standpoint that she remains unable to return to her job at the plant at this time. I cannot foresee her returning at any time in the future. I would recommend she stay on a permanent medical disability status.

(Admin. R. at 141).

In connection with her appeal, Plaintiff also submitted a letter from Dr. Powderly, dated February 25, 2002, which states that Plaintiff is "totally and permanently disabled. If you require further medical information, please contact my office." (*Id.* at 105).

Upon receipt of Plaintiff's appeal, Defendant MetLife forwarded the Plaintiff's records to Dr. J.W. Rodgers for a physician consultant review. Dr. Rodgers stated:

My impression at this point based on all of the information in this file would be that this patient continues to have low back pain. There is, however, no objective evidence in this file that this patient is incapable of walking. It is clear that *no one has felt that she is incapable of driving her car or maintaining her activities of daily living.*

At this point, based on the objective evidence in this file, it would appear that this patient should be tolerant of sedentary levels of activity and, in fact, sedentary levels of activity that would be very similar to her *activities of daily living,* and there are no descriptions of this patient having substantial restrictions in her activities of daily living.

(*Id.* at 133).

On May 3, 2002, MetLife notified Plaintiff of its decision to uphold the denial of long-term disability benefits.

A board certified Internal Medicine and Occupational Medicine Physician rendered an independent Physician Consultation. The Physician Consultant clinically reviewed the medical documentation on file. The Physician Consultant Review indicates that based on the information on file you continue to have low back pain. However, there is no objective evidence that you are incapable of walking, driving or maintaining your activities of daily living. There are no descriptions that you are having substantial restrictions in your activities of daily living. Therefore, the

Physician Consultant indicates that based on the objective evidence on file, it would appear that you should be tolerant of sedentary levels of activity, in fact, sedentary levels of activity that would be similar to your activities of daily living.

The existence of pain alone can not be considered as evidence of disability. The clinical testing results must demonstrate an existence of medical impairment that has resulted from anatomical, and/or physiological abnormality. The medical documentation indicates primarily degenerative changes. No severe physical limitations or deficits were shown on clinical testing or on physical examination. The Physician Consultant review also indicates that there were no restrictions from your activities of daily living and that you should tolerate sedentary levels of activities.

The medical documentation does not demonstrate that you were functionally precluded from your own sedentary occupation. Therefore, in our review of the claim, and in consideration of the definition of disability, it is our determination that the denial of your Long Term Disability claim was appropriate. Based upon all of the above information, we must uphold the denial of your claim for Long Term Disability benefits.

(Admin. R. at 126).

Plaintiff commenced the instant action following the MetLife's decision to uphold the denial of long-term disability benefits. Both parties move for summary judgment on the administrative record.

## II.

Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary of a disability benefits plan "to recover benefits due him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan." In reviewing a claim for alleged wrongful denial of benefits, the district court must base its decision solely upon the underlying administrative record. Evidence that was not presented to the plan administrator cannot be considered by the court. *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 619 (6th Cir.1998). As a result, summary judgment procedures are inconsistent with the appropriate standard of review for recovery of benefits claims under ERISA. *Id.* Accordingly, in this case, the Court will treat the parties' cross-motions for summary judgment as motions for entry of judgment on the merits.

In considering the parties' motions, the Court first addresses the appropriate standard for reviewing Plaintiff's claim. The Supreme Court has held that "a denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan vests such discretion in the administrator or fiduciary, the decision is reviewed under the deferential arbitrary and capricious standard. *See Perry v. United Food & Comm'l Workers District,* 64 F.3d 238 242 (6th Cir.1995); *Perez v. Aetna Life Insurance Co.,* 150 F.3d 550, 555 (6th Cir.1998). This standard "is the least demanding form of judicial review .... When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Perry,* 64 F.3d at 242. Determinations are not arbitrary or capricious if they are "rational in light of the plan's provisions." *Miller v. Metropolitan*

*Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991), quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir.1988). Although a plan need not include "magic words" in order to vest the plan administrator with discretion, the grant of discretionary authority must be "clear" in order to trigger the arbitrary and capricious standard of review. *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 807 (6th Cir.2002); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998) (*en banc*).

In contrast, the Sixth Circuit holds that "when applying a *de novo* standard in the ERISA context, the role of the Court reviewing a denial of benefits 'is to determine whether the administrator . . . made a correct decision.'" *Hoover* 290 F.3d at 808, quoting *Perry v. Simplicity Eng'g*, 900 F.2d at 963, 965 (6th Cir.1990). Further, under the *de novo* standard of review, the decision of the administrator is not accorded a presumption of correctness or deference. *Perry*, 900 F.2d at 965.

### III.

The benefits plan in this case states as follows:

> If the written proof of a claim:
> a. has been made on time; and
> b. is satisfactory to us;
> we will pay the accrued benefits monthly at the end of the period for which they are due.

(Admin. R. at 18). In addition, the plan states:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that

the interpretation or determination was arbitrary and capricious.

(*Id.* at 22).

■ The Sixth Circuit has held that language in a Plan requiring "satisfactory" proof of disability constitutes a level of discretionary authority sufficient to trigger the arbitrary and capricious standard of review for a denial of benefits claim. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376 (6th Cir.1996); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir.1998) (*en banc*). Nevertheless, Plaintiff in this case argues that the arbitrary and capricious standard should not apply because Defendant MetLife is an insurance company. According to Plaintiff, the relationship between the Defendants is more contractual in nature and as a result, "no deference [should be] afforded the drafter of an insurance contract." (*Plaintiff's Motion* at 8). In support of this position, Plaintiff relies on the Supreme Court's decision in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002).

As Defendants point out, Plaintiff's reliance on this case is misplaced. In *Rush Prudential*, the Supreme Court held that an Illinois statute granting participants in Health Maintenance Organizations ["HMOs"] the right to independent medical review of certain denials of benefits, was not preempted by ERISA. The decision is wholly inapposite to the issue at bar and fails to support Plaintiff's argument regarding the standard of review in ERISA cases.

In view of the clear language of the plan in this case and controlling Sixth Circuit authority, the Court concludes that the arbitrary and capricious standard of review applies to Plaintiff's denial of benefits claim. The Court now proceeds to consider the merits of the claim.

## IV.

In moving for Judgment in their favor, the Defendants argue that the decision to deny long-term disability benefits to Plaintiff was not arbitrary or capricious. The Defendants characterize Plaintiff's injury as not serious because the record reflects only a minimal amount of medical treatment for back injury. In addition, Defendants argue that since Plaintiff's position at Shell was sedentary in nature, the incumbent duties would not aggravate her back condition. Thus, Defendants submit that MetLife acted within its discretion in denying Plaintiff long-term disability benefits.

■ Plaintiff disagrees, contending that the decision is arbitrary and capricious because it ignored the opinion of Dr. Powderly, who stated that Plaintiff could not return to work. Plaintiff argues that the decision also ignored the opinion of Dr. Heavner, who initially evaluated Plaintiff on behalf of Shell and concluded that Plaintiff could not return to her previous position. Furthermore, Plaintiff contends that the opinion of Dr. Rodgers, who performed only a records review on behalf of MetLife and never met or examined her, should be given little weight. Further, Plaintiff contends that Rodgers' opinion should be given little weight because he is a pulmonologist, while all of her medical impairments involve limitations of the back.

The Court addresses Plaintiff's arguments first. With respect to Dr. Rodgers, the Court notes that, in addition to being a pulmonologist, he is board-certified in the specialty of internal medicine. (Admin. R. at 133). Thus, to the extent Plaintiff contends that Dr. Rodgers is unqualified to render an opinion on Plaintiff's back condition, the argument is without merit.

The Court next addresses Plaintiff's contention that the opinions of her treating physicians, Drs. Heavner and Powderly, should necessarily be afforded greater deference than the opinion of Dr. Rodgers. The United States Supreme Court recently held that ERISA does not require that special deference be given to the opinions of treating physicians. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); *Hildebrand v. Fortis Benefits Ins. Co.,* 70 Fed.Appx. 798, 2003 WL 21675539 (6th Cir.2003). For example, if the conclusion of a treating physician is not supported by objective testing or documented, reasoned analysis, in the Court's view, the opinion is entitled to little weight. At the same time, a non-examining physician is limited to reviewing and accepting documented findings and testings performed by a treating physician. Accordingly, Dr. Rodgers' opinion has evidentiary weight only to the extent it is based upon objective testing provided by Drs. Heavner and Powderly.

■ The Court next considers Plaintiff's argument that, since Defendant MetLife is "both the entity paying for the benefits and the entity adjudicating benefit claims," the Court should use a less deferential standard of review than otherwise applicable. (*Plaintiff's Motion for Summary Judgment* at 9). The presence of a potential conflict of interest does not automatically relax the otherwise applicable arbitrary and capricious standard of review. *Peach v. Ultramar Diamond Shamrock,* 229 F.Supp.2d 759, 765 (E.D.Mich.2002). "Rather, the conflict of interest is a factor taken into account when evaluating the [plan administrator's] decision under the arbitrary and capricious standard." *Id.,* citing *Marchetti v. Sun Life Assur. Co. of Canada,* 30 F.Supp.2d 1001, 1007 (M.D.Tenn.1998); *University Hospitals of Cleveland v. Emerson Elec. Co.,* 202 F.3d 839 846 (6th Cir.2000). Thus, the Court considers MetLife's position to this extent

only. The arbitrary and capricious standard remains applicable.

 In regard to the merits of this case, the Court concludes that the decision of MetLife to deny Plaintiff long-term disability benefits was arbitrary and capricious. Drs. Heavner and Powderly diagnosed Plaintiff as suffering from chronic back pain and both concluded that Plaintiff's back condition prevents her from performing her job duties. In addition, as recently as March 2002, Dr. Heavner reported that Plaintiff cannot stand for more than an hour at a time and has to lie down to relieve her pain. Dr. Heavner also reported that Plaintiff has limited range of motion and experiences difficulty performing some everyday household activities. (Admin. R. at 141). These limitations are inconsistent with the requirements of Plaintiff's former job, which require sitting for five to six hours, standing and walking for one to two hours, use of her hands and occasionally lifting up to ten pounds. Plaintiff's limitations were also apparently ignored by Dr. Rodgers in his independent evaluation of the case for MetLife.

Defendants denied Plaintiff's application for long-term disability benefits based largely upon the opinion of Dr. Rodgers. (Admin. R. at 126). In light of the evidence contained in the Administrative Record, the Court cannot conclude that the decision was rationally based. Furthermore, there is no indication that MetLife considered whether Plaintiff's limitations precluded her from performing a comparable occupation of her former employer.

In sum, the Court finds the decision of MetLife arbitrary and capricious. The Court concludes that the appropriate remedy at this juncture is to remand this case to the Plan Administrator for consideration of whether Plaintiff's limitations preclude her from performing her former position or a comparable position. In this regard, the Plan Administrator may want to consider directing Plaintiff to undergo an Independent Medical Examination before rendering its decision.

## V.

In light of the foregoing, Plaintiff's Motion for Judgment on the Administrative Record (**Doc. # 11**) is **GRANTED in part**. The Defendants' Motion for Judgment on the Administrative Record (**Doc. # 13**) is **DENIED**.

For the reasons discussed above, this case is **REMANDED** to the Plan Administrator. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**